# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

VENUS BLACKSHEAR,

       Plaintiff,

       v.

INTERSTATE BRANDS CORP.,

       Defendant.

Case No. 2:09-cv-06
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion for summary judgment (Doc. # 11), Plaintiff's memorandum in opposition (Doc. # 12), and Defendant's reply memorandum (Doc. # 17). Also before the Court is Defendant's motion to strike various exhibits (Doc. # 18) and Plaintiff's memorandum in opposition (Doc. # 19). For the reasons that follow, this Court finds only the motion for summary judgment well taken.

### I. Background

Plaintiff, Venus Blackshear, is an African-American female who in 2004 began working for Defendant, Interstate Brands Corporation. Defendant employed Plaintiff as a sanitor at its Columbus, Ohio bakery, which produced baked goods under the "Wonder Bread" name. A sanitor's job duties included maintenance and cleaning work, and Plaintiff performed these functions under the direct supervision of Rebecca Keller. Also employed as a sanitor at the bakery was Deidre Manning, a Caucasian female who was Plaintiff's domestic partner.

During the course of these women's employment, Keller allegedly asked Manning on dates and invited Manning to her home. Manning purportedly told Keller that she was involved

1

with Plaintiff. Plaintiff asserts that following these events, Keller began to discipline Plaintiff and "write her up" in an effort to get Plaintiff fired. Plaintiff routinely complained about the conduct she allegedly received at the bakery and during her course of employment had filed over five grievances with her union, various charges with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission, and multiple internal complaints with Defendant's human resources department.

During her employment, Plaintiff also experienced migraine headaches. Beginning in 2006, she obtained leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Whenever Plaintiff experienced blurred vision, she would stay home on FMLA leave.

On January 24, 2008, Bruce Rainey, another supervisor at the bakery, was speaking with Russ Renusch and Manning when he thought that Manning had said something to him. According to Rainey, Manning informed him that she had not said anything to him, but that she was "talking to that big mouth smart ass over there." (Arb. Tr. at 28.) She pointed toward the nearby Plaintiff. Plaintiff then moved toward Manning, Rainey asserts, and Plaintiff told Manning, "I will knock you the fuck out." (*Id.* at 30.) Rainey stepped between the two women and attempted to separate them as Plaintiff repeatedly told Manning, "[Y]ou need to get steppin'." (*Id.* at 31.)

After separating Plaintiff and Manning, Rainey attempted to find Keller, their supervisor. When he could not locate Keller, Rainey called Plaintiff and Manning into the supervisor's office and sent both women home. Rainey completed a written statement memorializing the incident, which he provided to Al Zarella, Defendant's Human Resources Manager. Rainey told Zarella about what had transpired, and Zarella subsequently met with Plaintiff, Manning, various

witnesses, and union representatives. Manning told Zarella that she had told Plaintiff to "[s]hut the F@#% up" and that this had caused the argument.[1] (Arb. Tr. Ex. 3.) She admitted in the interview that both women had cursed at one another, but stated that, with everything going on during the incident, she did not remember whether Plaintiff had threatened her. Manning later denied and continues to deny that Plaintiff threatened her. Defendant suspended Manning for seven days for inappropriate conduct.

When Zarella interviewed Plaintiff about the January 24, 2008 incident, Plaintiff explained that the incident occurred because Manning had diabetes. According to the interview notes, Plaintiff stated that Manning was experiencing a diabetic episode and that she was merely trying to help Manning calm down. Plaintiff explained that when she approached Manning's direction, it was not due to Manning's statement toward her but instead because Plaintiff needed to retrieve a broom and a dust mop. Although she denied threatening Manning, Plaintiff admitted that she told the woman whom she was attempting to calm to "[j]ust shut the F@#% up and calm the F@#% down." (Arb. Tr. Ex. 4.) After hearing Plaintiff's explanation, Zarella sought to re-interview Manning, but Manning refused to be interviewed again.

Zarella concluded that Plaintiff had violated Defendant's zero-tolerance Workplace Violence Policy. That policy provides in part:

> Violence, threats, harassment, intimidation, and other disruptive behavior in our workplace will not be tolerated: that is, all reports of incidents will be taken seriously and will be dealt with appropriately. Such behavior can include oral or written statement[s], gestures, or expressions that communicate a direct or indirect threat of physical harm. Individuals who commit such acts may be removed from the

---

[1] The report on the January 31, 2008 disciplinary meeting with Manning declines to spell out the profanity used. (Arb. Tr. Ex. 3.) In her deposition, Manning offers that she told Plaintiff to "just shut the fuck up." (Doc. # 15, Manning Dep. at 22.)

> premises and may be subject to disciplinary action, criminal penalties, or both.
>
> . . .
>
> Any employee found in violation of this policy will be subject to immediate termination of employment.

(Doc. # 13, at 22, Ex. 2.) Based on his conclusion that Plaintiff had violated this policy, Zarella spoke with Syd Wiley, Defendant's Regional Human Resources Director. Wiley concluded that Plaintiff's conduct required discharge, and on March 13, 2008, Defendant terminated Plaintiff's employment.

Plaintiff grieved the discharge. In a 2008 arbitration, an arbitrator concluded that Plaintiff's termination was disproportionate to the discipline that Manning had received and found in favor of Plaintiff. In February 2009, however, Plaintiff lost her position as a sanitor as part of a reduction in force; the entire bakery was subsequently closed. Plaintiff and Defendant entered into a settlement agreement in which she obtained back pay the period from her initial suspension to the elimination of her position as part of the reduction in force.

Prior to this settlement, Plaintiff had filed suit in the Franklin County Court of Common Pleas, asserting federal claims under Title VII, 42 U.S.C. § 2000e et seq., and the Family and Medical Leave Act, and state law claims under Ohio Revised Code § 4112 and for the intentional infliction of emotional distress. (Doc. # 3 ¶¶ 36-39.) Defendant removed the action to this Court in January 2009 (Doc. # 2), and following discovery, Defendant then filed its motion for summary judgment (Doc. # 11). Plaintiff filed her memorandum in opposition on January 25, 2010 (Doc. # 12), followed by a supplemental exhibit on February 5, 2010 (Doc. # 16). Defendant filed its motion to strike various exhibits on February 8, 2010. (Doc. # 18.) Briefing has closed on the motions, which are ripe for disposition.

## II. Motion to Strike

On January 8, 2010, Defendant filed its motion for summary judgment. (Doc. # 11.) Plaintiff filed her memorandum in opposition to that motion on January 25, 2010. (Doc. # 12.) On February 4, 2010, Defendant then filed amended versions of three summary judgment exhibits. (Docs. # 13, 14, 15.) The next day, Plaintiff filed a supplemental exhibit in support of her memorandum in opposition to the summary judgment motion. (Doc. # 16.) Three days later, Defendant filed both its reply memorandum related to the summary judgment motion (Doc. # 17) and a motion to strike (Doc. # 18) those exhibits collected as Exhibit 5 to Plaintiff's memorandum in opposition (Doc. # 12-5).

Defendant's motion states that Defendant moves to strike "[p]ursuant to Federal Rules of Civil Procedure 12(f) and 56(e)." (Doc. # 18, at 1.) Such reliance on the former rule is certainly erroneous, given that the rule permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) is thus confined on its face to pleadings. *See* Fed. R. Civ. P. 7(a) (identifying pleadings as a complaint, an answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and a court-ordered reply to an answer). Defendant therefore cannot use Rule 12(f) to strike a summary judgment exhibit. *See Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006) (declining to strike an attachment to a Rule 12(b)(6)/Rule 56 motion pursuant to Rule 12(f) because the attachment was not part of the pleadings); *cf. Tillman v. Calvary Portfolio Servs., LLC*, No. CV-08-8142-PCT-DGC, 2009 WL 510921, at *1-2 (D. Ariz. Feb. 27, 2009) (declining to strike an offer of judgment pursuant to Rule 12(f) because the offer is not a

pleading).

This leaves Defendant's reliance on Rule 56(e) as the mechanism through which Defendant can attempt to strike Exhibit 5. Plaintiff argues that this rule cannot provide a vehicle for a motion to strike, and some courts have reached a similar conclusion. *See Tucker v. Potter*, No. 1:06-CV-2359, 2009 WL 1954773, at *10 (N.D. Ohio July 6, 2009). Without discussing whether Rule 56(e) permits a motion to strike, the Sixth Circuit has affirmed the granting of a motion to strike made under that rule. *See, e.g., Mohney v. USA Hockey, Inc.*, 5 F. App'x 450, 454 (6th Cir. 2001). Other Circuits have similarly regarded as permissible motions to strike made under Rule 56(e). *See Discovery Licensing, Inc. v. King's Int'l Multimedia Co., Ltd.*, 260 F. App'x 537 (4th Cir. 2007) ("To the extent [the defendant] contends that the affidavits submitted by [the plaintiff] in support of its summary judgment motion did not comply with Fed.R.Civ.P. 56(e), we find that [the defendant] has waived its challenge by failing to file a motion to strike the affidavits in the district court."); *Taylor v. Principi*, 141 F. App'x 705, 708 (10th Cir. 2005) (" '[a]n affidavit that does not measure up to the standards of Rule 56(e) is subject to a motion to strike' " (quoting *Noblett v. Gen. Elec. Credit Corp.*, 400 F.2d 442, 445 (10th Cir. 1968))).

Assuming *arguendo* that the motion to strike under Rule 56(e) is proper here, this Court need not decide whether, as Plaintiff alternatively posits, the motion is too generic or broad in its grounds to provide cause for striking the exhibits targeted. Two reasons compel this conclusion to varying degrees. First, the parties have both submitted untimely evidence (in violation of S. D. Ohio Civ. R. 7.2(d) and (e)) related to the summary judgment motion that often repairs deficiencies in earlier filed evidence. *See* Docs. # 13, 14, 15, 16. Second, even considering the

6

material that Plaintiff has submitted in purported violation of Rule 56(e), the Court finds that summary judgment is appropriate for Defendant. Accordingly, the Court **DENIES AS MOOT** the inconsequential motion to strike. (Doc. # 18.)

### III. Summary Judgment

#### A. Standard Involved

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

In Count 1 of her Complaint, Plaintiff asserts that she "has been the victim of gender, sex, and/or sexual orientation, harassment, discrimination and retaliation in derogation of . . . Title VII, 42 USCA § 2000e et seq." (Doc. # 3 ¶ 36.) In Count 2 of that pleading, Plaintiff then claims that she "has been the victim of disparate treatment discrimination, harassment and retaliation due to race in derogation of . . . Title VII, 42 USCA §2000e et seq." (Doc. # 3 ¶ 37.) Defendant moves for summary judgment on both Title VII claims.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer...to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . or to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex . . . ." 42 U.S.C. §§ 2000e-2(a)(1)-(a)(2). Title VII also provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." *Id.* § 2000e-3(a). The same standard involved in a Title VII claim also governs a claim asserted under the state law counterpart, Ohio Revised Code § 4112. *See Koval v. Dow Jones & Co.*, 86 F. App'x 61, 65 (6th Cir. 2004) ("Ohio courts evaluate discrimination claims presented under § 4112 according to the same standards federal courts utilize to evaluate discrimination claims presented under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e-2000e(17)"); *Nelson v. Gen. Elec. Co.*, 2 F. App'x 425, 430 n.2 (6th Cir. 2001); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Thus, the Court shall

discuss these federal and state claims together.

Defendant argues that it is entitled to summary judgment on the discrimination and harassment claims because Plaintiff is asserting claims targeting sexual orientation discrimination or harassment, which are beyond the reach of Title VII and its state counterpart. *See Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 764-65 (6th Cir. 2006); *Tenney v. Gen. Elec. Co.*, No. 2001-T-0035, 2002 WL 1305990, at *3 (Ohio Ct. App. June 14, 2002). Plaintiff correctly concedes in her memorandum in opposition that such claims are not actionable. (Doc. # 12, at 13.) Plaintiff argues, however, that her claim of a "hostile environment sex harassment allegation" is based on that fact that Keller was attracted to Manning. (*Id.*) The flaw in this logic is that Keller's purported mistreatment of Plaintiff was not because Plaintiff was a female but because Plaintiff was a person (regardless of gender) who was involved in a relationship with Manning. Mere jealousy of this sort, however distasteful or immature, does not equate to discrimination, harassment, or retaliation based on gender. Rather, the personal animus of Keller against Plaintiff arguably involved here is not actionable. *See Diamond v. U.S. Postal Serv.*, 29 F. App'x 207, 212 n.5 (6th Cir. 2002) (declining to find discrimination based on sex in light of personal animus that existed against a plaintiff); *see also Falconer v. Papco, Inc.*, No. 06-247 Erie, 2008 WL 2486128, at *4-5 (W.D. Pa. June 17, 2008) (declining to find that a termination resulting from a supervisor's jealousy over the discharged's relationship with another individual constituted gender-driven discrimination under Title VII).

Plaintiff also asserts federal and state race discrimination claims. To survive summary judgment on these claims, Plaintiff must first present a *prima facie* case of such discrimination by introducing evidence sufficient to support a finding that she is a member of a protected class,

9

that she suffered an adverse employment action, that she was qualified either for her position, and that she was either replaced by someone outside the protected class or treated differently than similarly situated, non-protected employees. *Walker v. Ohio Dep't of Rehab. & Corr.*, 241 F. App'x 261, 266 (6th Cir. 2007) (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)). *See also Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 n.2 (6th Cir. 2000). Plaintiff can prove her claim of race discrimination in two ways.

The first way is by direct evidence, which the Sixth Circuit Court of Appeals has explained " 'is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor. With direct evidence, the existence of unlawful discrimination is "patent." ' " *Weberg v. Franks*, 229 F.3d 514, 524 (6th Cir. 2000) (quoting *Bartlik v. United States Dep't of Labor*, 73 F.3d 100, 103 n.5 (6th Cir. 1996)). Defendant correctly asserts that this is not a direct evidence case.

The second way in which Plaintiff can prove her claims is by offering indirect or circumstantial evidence to establish the alleged race discrimination. At least for purposes of its motion, Defendant does not dispute that Plaintiff is a member of a protected class, that her (later revoked) termination was an adverse employment action, and that she was qualified for her position. Defendant does argue, however, that Plaintiff has failed to present evidence that Defendant knew of workplace incidents involving those individuals whom Plaintiff asserts constitute differently treated but similarly situated, non-protected employees. Then, assuming *arguendo* that Plaintiff has presented a *prima facie* case, Defendant proceeds to argue that she cannot demonstrate that the company's articulated non-discriminatory reason for the treatment she received is mere pretext.

Because the pretext issue proves dispositive of the race discrimination claims, the Court shall assume that Plaintiff has established a *prima facie* case (although, as noted below, Plaintiff's reliance on Manning as similarly situated is erroneous). After a plaintiff has established her *prima facie* case in such circumstantial evidence cases, this Court must then employ the familiar *McDonnell Douglas/Burdine* burden-shifting framework. *See Hagan v. Warner/Elektra/Atlantic Corp.*, 92 F. App'x 264, 267 (6th Cir. 2004) (citing *Mitchell*, 964 F.2d at 582). The Sixth Circuit has explained the resulting inquiry:

> If a plaintiff demonstrates a *prima facie* case of either age or race discrimination, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the challenged employment actions. *McDonnell Douglas,* 411 U.S. at 802; *see also Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 574 (6th Cir. 2003) (en banc) (applying *McDonnell Douglas* analysis to age discrimination claim); *Zambetti v. Cuyahoga Cmty. Coll.,* 314 F.3d 249, 255-56 (6th Cir. 2002) (applying *McDonnell Douglas* analysis to reverse race discrimination claim). The defendant need only produce a legitimate, non-discriminatory reason; it need not persuade the court that this reason actually motivated the employment actions in question. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142-43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Once the defendant meets its burden of producing a legitimate, non-discriminatory reason for its challenged actions, the burden shifts to the plaintiff to demonstrate that the asserted justification is mere pretext for discriminatory motives. *Sutherland v. Mich. Dep't of Treasury,* 344 F.3d 603, 615 (6th Cir. 2003). The plaintiff may meet this burden by showing that the reason offered by the defendant for the challenged employment actions (1) has no basis in fact, (2) did not actually motivate the actions, or (3) was insufficient to warrant the actions. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). The burden of persuading the trier of fact that defendant's asserted justification is pretextual ultimately rests with the plaintiff. *Anthony v. BTR Auto. Sealing Sys., Inc.,* 339 F.3d 506, 515 (6th Cir. 2003).

*Koval,* 86 F. App'x at 66 (footnote omitted). Applying this standard, this Court must conclude that Plaintiff's race discrimination claims fail.

Defendant has presented evidence that it terminated Plaintiff for her violation of the Workplace Violence Policy. This is a legitimate non-discriminatory business reason. *See*

*Novotny v. Elsevier*, 291 F. App'x 698, 704 (6th Cir. 2008) (noting that violation of a company policy is a legitimate business reason for termination). It is well settled that to puncture this reason and establish pretext, a "plaintiff must allege more than a dispute over the facts upon which his discharge was based. [She] must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.,* 258 F.3d 488, 493-94 (6th Cir. 2001) (citing *Smith v. Chrysler*, 155 F.3d 799, 806-07 (6th Cir. 1998)). The court of appeals has therefore set forth the essential inquiry for a court:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.
>
> If there is no material dispute that the employer made a "reasonably informed and considered decision" that demonstrates an "honest belief" in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual.

*Braithwaite*, 258 F.3d at 494 (internal citation omitted) (quoting *Smith*, 155 F.3d at 807). There is no material dispute here over whether Defendant made a reasonably informed and considered decision that demonstrates an honest belief in the proffered reason for the treatment Plaintiff received. Moreover, Plaintiff's reliance on the fact that the non-protected class member Manning received lesser discipline for her role in the incident leading to Plaintiff's termination ignores the fact that there is no evidence that Manning, unlike Plaintiff, made a threat witnessed by Rainey. Zarella credited the threat after investigating the matter, and Wiley also concluded based on that investigation that Plaintiff had engaged in such distinguishable behavior violative of company policy. Manning is thus not a comparable to Plaintiff, which would inform the

*prima facie* case analysis and preclude reliance on the treatment of Manning for any pretext analysis related to the Defendant's honest belief and good faith. *See Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 484 n.5 (6th Cir. 2008) (explaining that a lack of the same conduct by employees in relation to a workplace violence policy defeated a *prima facie* case and rendered unnecessary a pretext analysis). There is thus no evidence that Defendant applied the workplace policy in a manner suggesting pretext covering for racially motivated misconduct. This same lack of pretext defeats Plaintiff's retaliation arguments.

Plaintiff also asserts a retaliation claim in violation of the FMLA. To establish a *prima facie* case of such retaliation here, Plaintiff must prove that (1) she availed herself of a protected right under the FMLA, (2) Defendant knew of her exercise of a protected right, (3) she was adversely affected by an employment decision made by Defendant, and (4) there was a casual connection between the exercise of the protected right and the adverse employment action. *DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 391 (6th Cir. 2005); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001); *cf. Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).

Defendant argues that it is entitled to summary judgment because Plaintiff cannot show any casual connection between an adverse employment action and her use of intermittent FMLA leave. For example, Defendant asserts, Plaintiff has failed to offer any evidence that her termination following the encounter with Manning was based on Plaintiff's use of intermittent FMLA leave. In response, Plaintiff points to a number of asserted adverse employment action and states that "[i]t is possible that this treatment was due in whole or in part due to Plaintiff's usage of FMLA. Therefore, Plaintiff should be granted the opportunity to present arguments

13

relative to FMLA retaliation before a jury of her peers." (Doc. # 12, at 15.) Plaintiff thus seeks to evade judgment by hypothesizing that there *might possibly* be a connection that she can later prove, but the time to present her evidence is now, and she has failed to do so. Such blatant, conclusory speculation hardly rises to the level of presenting evidence creating even a factual dispute as to whether there is a casual connection between the exercise of Plaintiff's protected right to FMLA leave and any adverse employment actions.

Even assuming *arguendo* that Plaintiff had indeed established a *prima facie* case, thereby creating a presumption of impropriety, the Court would conclude that her FMLA claim nonetheless fails. Because circumstantial evidence is involved, the Court would again employ the *McDonnell Douglas* analysis. *DeBoer*, 124 F. App'x at 391 (citing *Skrjanc*, 272 F.3d at 315). This leads to the related issues of whether Defendant has offered a legitimate, nondiscriminatory rationale for its conduct toward Plaintiff and, if so, whether Plaintiff has then produced evidence that the alleged nondiscriminatory rationale was in reality a pretext designed to mask improper action. The Court must answer the former question in the affirmative, because, as discussed above, Defendant has pointed to the violation of its workplace policy and a reduction in force to explain its conduct. Further, the fact that Plaintiff previously took FMLA leave without incident bolsters the credibility of Defendant's nondiscriminatory rationale here. *See Skrjanc*, 272 F.3d at 315. The extant issue thus becomes whether Plaintiff has demonstrated pretext.

Similar to her other federal claims, Plaintiff has failed to produce evidence of pretext in regard to her FMLA claim. At best, Plaintiff perhaps implicitly relies upon the timing of the events at issue here to assert pretext; Plaintiff's briefing does not explicitly suggest such a

temporal connection.  Defendant points out that the timing of events is so attenuated here that it in fact supports the company.  Regardless of any inference Defendant would have this Court draw, timing alone does not salvage Plaintiff's claim because "the FMLA does not give an employee who invokes the protection of the statute any greater rights to employment than the employee would otherwise have had."  *Skrjanc*, 272 F.3d at 316 (citing 29 U.S.C. § 2614(a)(3)(B); *Hubbard v. Blue Cross Blue Shield Ass'n*, 1 F. Supp. 2d 867, 875 (N.D. Ill. 1998)).  Here, as in *Skrjanc*, "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual."  *Skrjanc*, 272 F.3d at 317.  *See also Coulter v. Deloitte Consulting, L.L.C.*, 79 F. App'x 864, 867 (6th Cir. 2003).

Further, there has also been no showing here that Defendant treated Plaintiff differently than similarly situated, non-protected employees because of her invocation of her FMLA rights.  Unlike in *DeBoer*, for example, there has been no showing here that the employer ignored its own policies or similar circumstances that, considered *with* the timing issue, tend to prove that an illegal motivation was *more* likely than a permissible rationale offered by an employer.  *DeBoer*, 124 F. App'x at 392-94 (rejecting timing alone as sufficient evidence to demonstrate pretext, but accepting as sufficient combination of timing and other, independent suspicious circumstances).  In sum, even drawing all reasonable inferences in Plaintiff's favor, this Court must conclude that she has failed to produce evidence demonstrating that Defendant's stated reason had no basis in fact, that the stated reason was not the actual reason, or that the stated reason was insufficient to explain the company's actions.  Accordingly, Defendant is also entitled to summary judgment on Plaintiff's FMLA claim.

This leaves for discussion Plaintiff's state law claim for the intentional infliction of emotional distress. Under Ohio law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 6 Ohio St. 3d 369, 453 N.E.2d 666, syllabus (1983), *abrogated on other grounds by Welling v. Weinfeld*, 113 Ohio St. 3d 464, 866 N.E.2d 1051 (2007). The Sixth Circuit has explained the tort:

> In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff in Ohio must establish: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' 3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.' "

*Williams v. York Int'l Corp.*, 63 F. App'x 808, 813 (6th Cir. 2003) (quoting *Pyle v. Pyle*, 11 Ohio App. 3d 31, 463 N.E.2d 98, 103 (1983) (internal citations omitted in *Williams*)). Without having to consider the remaining prongs of this mandated inquiry, the Court finds that the second prong proves dispositive of the instant claim.

Ohio law provides for liability only where " 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' " *Torres v. White*, 46 F. App'x 738, 755 (6th Cir. 2002) (quoting *Yeager*, 6 Ohio St. 3d at 375, 453 N.E.2d at 671 (citation to Restatement (Second) of the Law, Torts 71, § 46(1) cmt. d (1965) eliminated)). Plaintiff does not present a claim falling within the scope of this tort because even resolving all inferences in her favor, no reasonable juror could

16

conclude that the conduct recounted here constitutes the type of extreme, outrageous behavior required to support a claim for the intentional infliction of emotional distress. Terminating an individual for violation of a workplace policy under the circumstances presented here, for example, does not constitute outrageous behavior even if it is likely to induce stress on the discharged. *See Foster v. McDevitt*, 31 Ohio App. 3d 237, 239, 511 N.E.2d 403, 406 (1986) (explaining that an employer is never liable for doing no more than acting on its legal rights in a permissible way, even though it is well aware that such conduct is certain to cause emotional distress). Plaintiff has failed to present facts indicating conduct that a reasonable person could conclude is " 'beyond all possible bounds of decency.' " *Liadis v. Sears, Roebuck & Co.*, 47 F. App'x 295, 299 (6th Cir. 2002) (declining to impose liability for intentional infliction of emotional distress when facts do not rise to quoted standard) (quoting *Yeager,* 6 Ohio St. 3d at 374-75, 453 N.E.2d at 671)); *Torres*, 46 F. App'x at 756-57 (same). Accordingly, Defendant is also entitled to summary on Plaintiff's claim for the intentional infliction of emotional distress.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES AS MOOT** Defendant's motion to strike (Doc. # 18) and **GRANTS** Defendant's motion for summary judgment (Doc. # 11). The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

                                       /s/ Gregory L. Frost
                                       GREGORY L. FROST
                                       UNITED STATES DISTRICT JUDGE